1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CASEY B. SHELDON,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br><br>                    Defendant. | NO:  14-CV-3030-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12 and 14.  This matter was submitted for consideration without oral argument.  Plaintiff was represented by Francisco R. Rodriguez. Defendant was represented by Christopher J. Brackett.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.

**JURISDICTION**

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 1

Plaintiff Casey B. Sheldon filed for disability insurance benefits on January 11, 2011, alleging an onset date of January 8, 2010 Tr. 156-157. Benefits were denied initially and upon reconsideration. Tr. 94-96, 100-101. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Helen Francine Strong on January 26, 2012. Tr. 29-66. Plaintiff was represented by counsel and testified at the hearing. Tr. 37-38, 51-58. Medical expert Dr. Wil B. Nelp and vocational expert William H. Weiss also testified. Tr. 39-50, 59-66. The ALJ denied benefits (Tr. 10-28) and the Appeals Council denied review (Tr. 1). The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 48 years old at the time of the hearing. Tr. 37. She testified that she completed four years of college. Tr. 37. For thirteen years before the alleged disability onset date Plaintiff was employed as president of the "NW & Tech Practice" of a global public relations firm. Tr. 181, 198. Previous to that she was the brand marketing manager for a computer manufacturer. *Id*. Plaintiff alleges she is disabled due to chronic fatigue syndrome. *See* Tr. 100. Plaintiff testified that she liked her job and anticipated going back until her symptoms got worse. Tr. 52. She

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 2

testified that she goes grocery shopping "when [she] can" and has a housekeeper come in to help with cleaning. Tr. 53. Plaintiff testified that she can usually run errands or go to doctor's appointments three or four times a week, but "most of the time" she cannot leave her apartment. Tr. 54. As recommended by her doctor, Plaintiff does yoga and stretching and walks three or four blocks when she able, which "ends up being three or four days" a week. Tr. 55-56.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue,* 698 F.3d 1153, 1158–59 (9th Cir.2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible

to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir.2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders,* 556 U.S. 396, 409–10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 4

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4) (i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a) (4)(iii). If the impairment is as severe or more

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 5

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416 .920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a) (4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  6

education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(g)(1); 416.920(g) (1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir.2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § § 404.1560(c); 416.960(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 8, 2010, the alleged onset date. Tr. 15. At step two, the ALJ found Plaintiff has the following severe impairments: chronic fatigue syndrome ("CFS") and disorders of [the] back (discogenic, degenerative). Tr. 15. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. Tr. 15. The ALJ then determined that Plaintiff has the RFC

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 7

1    to perform sedentary work as defined in 20 CFR 404.1567(a) except for the

2    following limitations. The claimant is able to occasionally climb ramps and

     stairs, but never climb ladders, ropes, and scaffolds, and only rarely balance,

3    stoop, kneel, crouch, and crawl. Additionally, she must avoid concentrated

     exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors,

4    dusts, gases, areas with poor ventilation, hazardous machinery, and

     unprotected heights.

5    Tr. 16. At step four, the ALJ found Plaintiff is capable of performing past relevant

6    work as a company president. Tr. 21. In the alternative, at step five, considering the

7    Plaintiff's age, education, work experience, and RFC, the ALJ determined that

8    Plaintiff has also acquired work skills from past relevant work that are transferable

9    to other occupations with jobs existing in significant numbers in the national

10   economy. Tr. 22. The ALJ concluded that Plaintiff has not been under a disability,

11   as defined in the Social Security Act, from January 8, 2010, through the date of the

12   decision. Tr. 22.

**ISSUES**

13

14        The question is whether the ALJ's decision is supported by substantial

15   evidence and free of legal error. Specifically, Plaintiff asserts: (1) the ALJ erred in

16   assessing Plaintiff's credibility; (2) the ALJ erred in rejecting evidence from

17   Plaintiff's treating physicians and "other sources;" (3) the ALJ erred in rejecting

18   the statements of lay witnesses; and (4) the ALJ erred in finding that Plaintiff could

19   perform past relevant work. ECF No. 12 at 3-20. Defendant argues: (1) Plaintiff's

20   subjective allegations were not credible; (2) the ALJ properly weighed the medical

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  8

1    opinion evidence; (3) the ALJ properly rejected the lay statements; and (4) the

2    ALJ's uncontested finding that Plaintiff could perform other work existing in

3    significant numbers in the national economy rendered harmless any error regarding

4    her past relevant work. ECF No. 14 at 3-20.

5                                    **DISCUSSION**

6    **A. Credibility**

7            In social security proceedings, a claimant must prove the existence of

8    physical or mental impairment with "medical evidence consisting of signs,

9    symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's

10   statements about his or her symptoms alone will not suffice. *Id*. Once an

11   impairment has been proven to exist, the claimant need not offer further medical

12   evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v.*

13   *Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (en banc). As long as the impairment

14   "could reasonably be expected to produce [the] symptoms," the claimant may offer

15   a subjective evaluation as to the severity of the impairment. *Id.* This rule

16   recognizes that the severity of a claimant's symptoms "cannot be objectively

17   verified or measured." *Id.* at 347 (quotation and citation omitted).

18           If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ

19   must make a credibility determination with findings sufficiently specific to permit

20   [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 9

1 testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir.2002). In making this

2 determination, the ALJ may consider, *inter alia:* (1) the claimant's reputation for

3 truthfulness; (2) inconsistencies in the claimant's testimony or between his

4 testimony and his conduct; (3) the claimant's daily living activities; (4) the

5 claimant's work record; and (5) testimony from physicians or third parties

6 concerning the nature, severity, and effect of the claimant's condition. *Id.* Absent

7 any evidence of malingering, the ALJ's reasons for discrediting the claimant's

8 testimony must be "specific, clear and convincing." *Chaudhry v. Astrue,* 688 F.3d

9 661, 672 (9th Cir.2012) (quotation and citation omitted). [1]

10      Here, the ALJ "[did] not find the claimant's allegations of disability entirely

11 credible." Tr. 17. Plaintiff argues the ALJ erred in assessing Plaintiff's credibility.

---

12 [1] Defendant argues that the court should apply a more deferential "substantial

13 evidence" standard of review to the ALJ's credibility findings. ECF No. 14 at 3-4.

14 The court declines to apply this lesser standard. The Ninth Circuit recently

15 reaffirmed in *Garrison v. Colvin* that "the ALJ can reject the claimant's testimony

16 about the severity of her symptoms only by offering specific, clear and convincing

17 reasons for doing so;" and further noted that "[t]he governments suggestion that we

18 should apply a lesser standard than 'clear and convincing' lacks any support in

19 precedent and must be rejected." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

20 2014).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  10

ECF No. 12 at 16-18. The court agrees. Notably, the ALJ acknowledged that "the medical record establishes diagnoses of chronic fatigue syndrome, with documented complaints of persistent tiredness and fatigue, sleepiness, headaches, joint discomfort, and disrupted sleep. The record further documents findings of degenerative disease of the spine with associated pain and tenderness and decreased range of motion." Tr. 17 (citing Tr. 401, 426-428, 441, 445-461, 466-495, 617-618, 632-635, 653, 683, 685, 696-700, 704). Nevertheless, the ALJ found "the objective medical evidence of record does not support finding a more restrictive [RFC] than for a limited range of sedentary work"; and "treatment records and exam findings do not support the degree of severity alleged." Tr. 17. Subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, however, medical evidence is a relevant factor in determining the severity of a claimant's disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). In support of this reasoning, the ALJ relied on a single medical record documenting Plaintiff's October 2010 visit with treating physician Dr. Steven Overman, during which Dr. Overman reported symmetric motor and sensory function, found mild spinal tenderness and mild right pelvic pain on examination, and noted that x-rays indicated mild degenerative changes of the cervical and thoracic spine. Tr. 653. However, while not noted by the ALJ, at this same visit Dr. Overman assessed limitations in 18 out of 20 activities of daily

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 11

living; noted that the imaging results indicated "[p]ossible sacroiliac abnormalities

bilaterally;" and noted abnormal laboratory results including vitamin D deficiency,

IgG antibodies consistent with HSV2 infection, and Epstein-Barr virus infection.

Tr. 653-54. Thus, while properly considered by the ALJ, this single visit with Dr.

Overman indicating the results of a few discrete tests were "mild" or "symmetric"

does not rise to the level of substantial evidence supporting a clear and convincing

reason to discount Plaintiff's credibility, particularly in light of the abundance of

evidence that supports Plaintiff's primary ongoing complaint of debilitating

fatigue. *See* Tr. 400-401, 441, 518, 520-522, 529, 542, 550, 556, 560, 568, 624-

635, 651-654, 671, 683, 685, 698-700. Moreover, as discussed below, the ALJ's

only other reasons for rejecting Plaintiff's testimony are not clear, convincing, and

supported by substantial evidence. As such, even if the objective medical evidence

does not support the level of impairment claimed, the negative credibility finding is

inadequate because a lack of objective evidence cannot be the sole basis for

discrediting Plaintiff's testimony.

First, the ALJ found that "treatment records indicate steady improvement in

symptoms with medication and physical therapy/chiropractic care." Tr. 17. An ALJ

may rely on the effectiveness of treatment to support an adverse credibility

finding." *See Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 599-600 (9th

Cir. 1999) (ALJ relied on report that Plaintiff's symptoms improved with the use

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 12

of medication).  In support of this finding, the ALJ relies on "[p]rogress notes indicat[ing] the claimant's consistent reports of improvement in back and joint pain and range of motion with chiropractic care, as well as a care provider's assessment of a good progress (e.g. 'reported feeling better after the treatment … showing improvement'). Tr. 17 (citing 446-458, 471-478). However, as noted by Plaintiff, these reports of improvement were largely temporary and occurred only immediately after treatment sessions. ECF No. 12 at 7. While not acknowledged by the ALJ, Plaintiff reported only a 20% improvement since the start of care (Tr. 478), and her reported functioning and pain level remained severely limited (Tr. 481-482). Moreover, in December 2010 Plaintiff's chiropractor Dr. Scott Mindel reported that despite "diligence with treatment and participation," Plaintiff made "minimal progress" over nine months of treatment; and Dr. Mindel opined that Plaintiff "is not able to engage in any form of work at this time." Tr. 492.

The ALJ also relied on a progress note from treating physician Dr. Steven Overman in January 2011 indicating that Plaintiff experienced a "bit of an energy lift" and "is not fatiguing post breakfast" after taking Alpha ENF in the morning. Tr. 17, 709. At the same visit, Plaintiff's reported that she experienced less headaches and joint pain, and her use of NSAID's had declined. Tr. 17, 709. However, as noted by Plaintiff, this apparent improvement is belied by notes from the next visit with Dr. Overman showing that Plaintiff experienced headaches

1    when trying certain doses of alpha ENF, and overall "[h]as had a difficult time

2    with any sort of physical activity." Tr. 708. It is at this visit that Dr. Overman

3    recommends that Plaintiff engage in "small doses of smaller movements" such as

4    walking around the block or some yoga. Tr. 708. However, despite the ALJ's

5    suggestion that this recommendation was evidence of improvement in Plaintiff's

6    condition, she failed to consider Dr. Overman's caution that this daily exercise

7    must not raise Plaintiff's heart rate because it "stimulates response in her." Tr. 17,

8    708. Finally, the ALJ referred to Dr. Overman's notes that Plaintiff had "definite

9    benefits from [the pain medication] Mobic" (Tr. 702) and "finds [Mobic] helpful

10   for controlling her symptoms" (Tr. 704). Tr. 17. However, as noted by Plaintiff,

11   Mobic is a pain medication, and while the court notes the documented relief from

12   this symptom, there is no evidence that it affected her primary complaint of

13   debilitating fatigue. ECF No. 12 at 6. Moreover, the most recent record available

14   from Dr. Overman referenced ongoing "drug strategies" and "combination

15   therapies," including a trial of prednisone, presumably to address Plaintiff's

16   ongoing treatment needs despite any benefit experienced by using Mobic. Tr. 702.

17        After considering all of this evidence offered in support of the ALJ's

18   reasoning that Plaintiff experienced "steady improvement in symptoms," the court

19   finds the ALJ appears to rely only on portions of the record that favored her

20   ultimate conclusion that Plaintiff was not credible. *See Gallant v. Heckler*, 753

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  14

F.2d 1450, 1456 (9th Cir. 1984) (an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"). Further, the ALJ fails to specifically identify the testimony she finds is not credible or explain why the cited examples of "improvement" undermine Plaintiff's testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (in making a credibility finding, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). Plaintiff testified that her symptoms are unpredictable and she has "good days" when she can get "most of the things I want to get done, done," while on other days she cannot get out of bed. Tr. 38. This is consistent with progress notes indicating intermittent "improvement" of symptoms. Tr. 17. For all of these reasons, and after an exhaustive independent review of the record, the court finds the ALJ's reasoning regarding alleged improvement in Plaintiff's symptoms is not supported by substantial evidence.

Second, the ALJ found "the claimant's daily functioning and other reported activities are inconsistent with assertions of disabling impairment." Tr. 19. There are two grounds for using daily activities to form the basis of an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, the daily activities may contradict a claimant's other testimony. *Id*.; *Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 15

may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). Second, as found by the ALJ in this case, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his or her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn*, 495 F.3d at 639. In support of this reasoning, the ALJ cited claimant's function report indicating that she prepares her own meals, lives alone, attends medical appointments, handles business affairs, attends to personal care/hygiene, does her own laundry, walks, and drives a car. Tr. 19, 205-208. Plaintiff reported that she shops for groceries and household needs once or twice per week; and goes out with friends once or twice a month. Tr. 19, 207-208. The ALJ also cited Plaintiff's testimony that she tries to do yoga, and walk three to four blocks when she can. Tr. 19, 55.

Plaintiff argues that the ALJ erred in finding Plaintiff's activities were inconsistent with disability because periods of sporadic activity "punctuated with rest" are consistent with a CFS diagnosis and with Plaintiff's claims of disabling fatigue. ECF No. 12 at 8-9 (citing *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998). The court agrees. Here, the record as a whole does not support the ALJ's characterization of Plaintiff's activities, which are limited and often require accommodation. For example, in the disability report Plaintiff states that household

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  16

chores such as preparing meals and doing housework are only done as tolerated

and with frequent rest. Tr. 206. She has a housekeeper, buys prepared food, and

has started having most of her groceries delivered. Tr. 206-207. She pays bills and

fills out paperwork only when she has energy and with frequent rest periods. Tr.

205. She can walk only 5-10 minutes before needing to stop and rest for anywhere

from five minutes to several hours. Tr. 209. Plaintiff testified that she tries to do

yoga and walking as recommended by her doctor when she is able, but is only able

to walk three or four blocks. Tr. 55. She also testified that she grocery shops "when

I can" but "can't always do it the day I planned to do it" due to fatigue; and she

does errands three or four days a week but "probably most of the time, it's just

more, more – would take more energy than I have." Tr. 53-54. As in *Reddick*, the

court finds Plaintiff's reported activities are fully consistent with the episodic

nature of a CFS diagnosis, and the ALJ's reasoning is unsupported by the record as

a whole. *Reddick*, 157 F.3d at 722-23 (finding the ALJ's "paraphrasing of record

material is not entirely accurate regarding the content or tone of the record" and

concluding that the ALJ's "approach and conclusions do not fully account for the

nature of CFS and its symptoms").

Moreover, the mere fact that Plaintiff engages in basic maintenance

activities such as grocery shopping and driving a car does not detract from

credibility as to overall disability. It is well-settled that a claimant need not be

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  17

utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not "vegetate in a dark room" to be found disabled). Finally, the ALJ did not identify activities that approach the level of effort required to maintain the demands of full time work. "In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's ability to work on a *sustained* basis." *Lester*, 81 F.3d at 833 (emphasis added). Nor does the ALJ elaborate on how Plaintiff spends a "substantial part" of any day engaged in activities that are transferable to a work setting. *See Thomas*, 278 F.3d at 958 ("the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). Thus, while the ALJ did identify a number of daily activities, when reviewed in the context of the entire record they show a person accomplishing limited tasks that would not transfer to the ability to maintain ongoing fulltime employment.

Finally, the ALJ appears to rely heavily on medical expert Dr. Wil B. Nelp's interpretation of the objective evidence in the record and opinion that "based on the objective findings of exercise and her medical records," the Plaintiff is capable of work at the sedentary level. Tr. 18, 46-47. In evaluating credibility, an ALJ may consider testimony from physicians and third parties concerning the nature,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 18

1    severity, and effect of the symptoms . *Thomas*, 278 F.3d at 959. However, as

2    discussed in detail below, reliance on this non-treating physician's opinion does

3    not constitute substantial evidence, as it is not based on independent evidence in

4    the record. *See* infra, section B.1. Therefore, the ALJ's rejection of Plaintiff's

5    treating and examining medical professional's opinions in favor of Dr. Nelp's

6    interpretation of the medical evidence was error; and Dr. Nelp's opinion cannot

7    serve as a clear and convincing reason to discount Plaintiff's credibility.

8        Based on the foregoing, the court finds the ALJ failed to cite specific, clear

9    and convincing reasons, supported by substantial evidence, for the adverse

10    credibility finding. On remand, the ALJ should reconsider the credibility finding.

11    **B. Medical Opinion Evidence**

12        There are three types of physicians: "(1) those who treat the claimant

13    (treating physicians); (2) those who examine but do not treat the claimant

14    (examining physicians); and (3) those who neither examine nor treat the claimant

15    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

16    *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001) (citations omitted).

17    Generally, a treating physician's opinion carries more weight than an examining

18    physician's, and an examining physician's opinion carries more weight than a

19    reviewing physician's. *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th

20    Cir.2001)(citations omitted). If a treating or examining physician's opinion is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 19

uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir.1995)). Plaintiff argues the ALJ improperly rejected the medical opinions of treating physicians and "other sources." ECF No. 12 at 3-16.

### 1) Dr. Steven Overman and Dr. Gary Schuster, treating physicians [2]

In December 2010 Dr. Overman reported that he initially diagnosed Plaintiff with CFS of "unclear etiology," and possible sero-negative spondylarthritis causing back and leg pain. Tr. 401. Dr. Overman reviewed the results of objective testing and found that Plaintiff's "metabolic systems no longer work normally, and she has limitations in cardiovascular, pulmonary, and metabolic output, and this affects her cognitive function as well as her significant symptoms of fatigue, headaches, concentration problems, and weakness." Tr. 401-402. Ultimately, he opined that Plaintiff "is work disabled based on objective measures and evidence of underlying medical conditions that are associated with inflammatory

[2] The ALJ considered these opinions and rejected them for the exact same reasons, so the court will also analyze them together. *See* Tr. 20.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 20

spondyloarthropathy white matter lesions in her brain, and cardiopulmonary

limitations on exercise testing." Tr. 402. Also in December 2010, Plaintiff's

primary physician Dr. Schuster diagnosed CFS, elevated Epstein-Barr virus titers,

physiologic hypersomnia, abnormal physiologic testing, myalgias/arthralgias

involving the neck and upper extremity, Brain MRI with white matter vasculitis,

B12 deficiency, and depression secondary to the development of her physical

disease. Tr. 632-634. Dr. Schuster opined that Plaintiff "has demonstrated an

unquestionable loss of physical capability to work even at a sedentary level;" and

is not capable of working predictively eight hours daily. Tr. 634. He also opined

that Plaintiff's "prognosis is poor for improvement enough to be alert for work;"

and due to chronic pain, fatigue and other diagnoses, Plaintiff is not capable of

work on a more probable than not basis. Tr. 635.

The ALJ accorded the opinions of Dr. Schuster and Dr. Overman "little

weight." Tr. 20. Plaintiff argues the ALJ erred in rejecting the opinions of these

treating physicians without providing specific, legitimate reasons. ECF No. 12 at

3-10. The court agrees. First, the ALJ generally cites the same objective evidence

she relied on in her credibility evaluation, namely, findings from Plaintiff's

October 2010 visit with Dr. Overman of symmetric motor and sensory function,

mild spinal tenderness and mild right pelvic pain on examination, and mild

degenerative changes of the cervical and thoracic spine. Tr. 653. "[A]n ALJ may

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 21

discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003) (citations omitted). However, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; instead, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*  Here, Plaintiff correctly argues that the discrete objective findings cited by the ALJ entirely fail to address "the existence or severity of the symptoms Dr. Overman identified as significant: fatigue, headaches, and concentration problems." ECF No. 12 at 3 (citing Tr. 402). In fact, the ALJ failed to provide any explanation or description of how Dr. Overman's or Dr. Schuster's opinions are unsupported by objective medical findings. Nor did the ALJ reconcile this reasoning with her own findings earlier in the decision acknowledging that the medical record as a whole repeatedly confirms a diagnosis of CFS; findings of degenerative disease of the spine with associated pain and tenderness and decreased range of motion; and persistent complaints of debilitating fatigue, headaches, joint discomfort, and disrupted sleep. Tr. 17 (citing Tr. 401, 426-428, 441, 445-461, 466-495, 617-618, 632-635, 653, 683, 685, 696-700, 704).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 22

1  Thus, the court finds this reason for rejecting the opinions of Dr. Overman and Dr.

2  Schuster is not specific, legitimate, or supported by substantial evidence.

3          Next, the ALJ rejects the opinions of Dr. Overman and Dr. Schuster for the

4  same reasons he found Plaintiff not credible, namely: "these opinions are not

5  consistent with progress notes indicating improvement with medication and

6  treatment, and [Plaintiff's] ability to exercise and perform activities of daily living,

7  as discussed above." Tr. 20. These types of inconsistencies may be legitimate

8  reasons for discounting medical opinions. *See Batson*, 359 F.3d at 1195 (ALJ may

9  discredit treating source's medical opinion that is unsupported by the record as a

10 whole); *Bayliss*, 427 F.3d at 1216 (discrepancy between treating physician's

11 opinion and clinical notes justified rejection of opinion); *Morgan*, 169 F.3d at 601-

12 602 (an ALJ may discount a medical source opinion to the extent it conflicts with

13 claimant's report of daily activities). However, as discussed in detail above, the

14 ALJ's findings regarding Plaintiff's daily activities, and her alleged improvement

15 with medication and chiropractic care, was not supported by substantial evidence

16 in the record. *See* supra, section A. Moreover, the ALJ fails to explain how

17 Plaintiff's alleged improvement of symptoms or reported daily activities were not

18 consistent with any specific aspect of the medical opinion evidence offered by Dr.

19 Overman or Dr. Schuster. *See Reddick*, 157 F.3d at 725 (ALJ must "set forth his

20 own interpretations and explain why they, rather than the doctors', are correct").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  23

The court concludes that these reasons for rejecting Dr. Overman and Dr. Schuster's opinions were not specific and legitimate.

Finally, the ALJ found that "the opinions of Dr. Schuster and Dr. Overman are not consistent with the opinion of [non-examining] medical expert Dr. Nelp and the opinions of [non-examining] state agency physicians Dr. Thuline and Dr. Peril, who concluded that the medical record, as a whole, demonstrates that the claimant is capable of at least sedentary duty." Tr. 20. The ALJ relied heavily on the testimony of Dr. Nelp, who reviewed the entire record and confirmed that the evidence was consistent with diagnoses of CFS, based on Plaintiff's allegations of persistent fatigue and tiredness. Tr. 42. Dr. Nelp also testified that CFS has no known cause and there is no specific laboratory test used to diagnosis CFS. Tr. 43, 48. He opined that "based on the objective findings of exercise in her medical records" and "taking into consideration the fatigue aspect of the case," that Plaintiff's has an RFC to perform at the sedentary level with additional postural and environmental limitations. Tr. 46-49. The ALJ accorded Dr. Nelp's opinion "great weight." In addition, state agency reviewing medical consultants Dr. Dale Thuline and Dr. Michael Perll both opined that Plaintiff could perform a limited range of light work with additional postural and environmental limitations. Tr. 19-20, 218-219, 239-241. The ALJ granted these non-treating and non-examining

1  opinions "limited weight," but cited them as support for Dr. Nelp's conclusion that

2  Plaintiff could perform sedentary work. Tr. 20.

3      "Although the contrary opinion of a non-examining medical expert does not

4  alone constitute a specific, legitimate reason for rejecting a treating or examining

5  physician's opinion, it may constitute substantial evidence when it is consistent

6  with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d

7  1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th

8  Cir. 1989)). Thus, in addition to the testimony of a non-examining medical expert,

9  the ALJ must have other evidence to support a decision to reject the opinion of a

10  treating physician, such as laboratory test results, contrary reports from examining

11  physicians, or testimony from the Plaintiff that was inconsistent with the treating

12  physician's opinion. *See Magallanes*, 881 F.2d at 751-52; *Andrews v. Shalala*, 53

13  F.3d 1042-43 (9th Cir. 1995). Plaintiff argues that the ALJ improperly rejected the

14  opinions of Plaintiff's treating physicians "based on the contrary opinions of

15  doctors who had never treated or even examined [Plaintiff]." ECF No. 12 at 4-5.

16  The court agrees.

17      First, the ALJ fails to support his rejection of Dr. Overman and Dr. Schuster

18  in favor of Dr. Nelp's, with independent evidence in the record. *See Tonapetyan*,

19  242 F.3d at 1149. The ALJ noted that "as Dr. Nelp testified, the claimant's brain

20  MRI showed 'very minor abnormalities not considered to be significant,' and her

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 25

exercise performance testing indicated normal EKG and an exercise capacity

(based on her treadmill performance) sufficient for sedentary level of exertion." Tr.

20, 44. However, the radiologist who first interpreted the results of the MRI did not

evaluate the white matter tracts as "minor" or "not significant;" nor did any other

medical opinion in the record. Tr. 425. Dr. Nelp also referred to the physical

capacities tests as an "elaborate evaluation," but his testimony did not address the

consistently "abnormal" results of those tests (Tr. 297-339), rather, he testified

only that Plaintiff had a normal EKG in one set of tests, and was able to walk at a

"very significant speed" of 2.5 miles an hour for ten minutes three times in

succession for a total of 45 minutes. Tr. 18, 45. However, while not discussed by

the ALJ, these tests were also reviewed by Plaintiff's treating physicians and

referenced at length in their opinions as to her ability to work. In direct contrast to

Dr. Nelp's assessment of the exercise tests as "normal," Dr. Overman referenced

Plaintiff's increased heart rate response; swelling of hands, wrists, ankles, and feet;

reduction of anaerobic threshold; inadequate ventilatory reserve during exercise;

and impaired reaction time and cognitive function. Tr. 401-402. Accordingly, Dr.

Overman found Plaintiff was "work disabled *based on objective measures* and

evidence of underlying medical conditions that are associated with inflammatory

spondyloarthropathy, white matter lesions in her brain, and cardiopulmonary

limitations on exercise testing." Tr. 402 (emphasis added). Similarly, Dr. Schuster

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 26

1   diagnosed Plaintiff with "abnormal physiologic testing" and "brain MRI with

2   white matter;" and opined that Plaintiff

> has demonstrated an unquestionably loss of physical capability to work even
> at a sedentary level based on her marked diminution in exercise capacity,
> decreased anaerobic threshold, decreased aerobic capacity, decreased
> primary function capacity, anemia of triple origin, folate, B12, and iron
> deficiency contributed to her disability and inability to work based on the
> fact that they markedly limit her physical capabilities of performing minimal
> activities of daily living.

7   Tr. 632-635.

8       Defendant argues generally that the ALJ properly gave Dr. Nelp's opinion

9   greater weight than the treating physician's opinions because it "was better

10  supported by objective evidence." [3] ECF No. 14 at 13 (citing 20 C.F.R. §

---

11  [3] Defendant also argues that the treating physician's opinions were properly

12  rejected by the ALJ because (1) their respective opinions that Plaintiff was

13  "disabled" or "unable to work" (Tr. 402, 635) was an opinion reserved to the

14  Commissioner alone; and (2) as opposed to Dr. Nelp, their opinions "did not

15  outline specific limitations (i.e. how long [Plaintiff] could sit, stand, or walk, or

16  how much [Plaintiff] could lift) that would reflect consideration of the objective

17  evidence." ECF No. 14 at 12-13. However, Plaintiff correctly notes that these

18  reasons are not offered by the ALJ as part of the decision, and the court "review[s]

19  the ALJ's decision based on the reasoning and factual findings offered by the ALJ

20  – not post hoc rationalizations that attempt to intuit what the adjudicator may have

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 27

404.1527(c)(3)) As an initial matter, Plaintiff correctly notes that the ALJ failed to provide any explanation as to why Dr. Nelp's interpretation of the objective testing should be given more weight than Plaintiff's treating providers. *See Reddick*, 157 F.3d at 725 (ALJ must do more than offer conclusions, rather, he or she must "set forth his own interpretations and explain why they, rather than the doctors', are correct"). Moreover, Defendant's reliance on this regulation is misplaced. "Supportability" is only one of many factors to be considered in deciding the weight accorded to a medical opinion; and all three of these physicians relied on the same objective evidence to support their opinions so the requisite "degree to which they provide[d] supporting explanations for their opinions" was presumably identical despite the differences in their respective conclusions. See 20 C.F.R. § 404.1527(c)(3). Finally, and dispositive on this issue,

> [w]hen an [non-treating] physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the [non-treating] physician are not 'substantial evidence.' … By contrast, when a [non-treating] physician provides 'independent clinical findings that differ from the findings of a treating physician,' such findings are 'substantial evidence.' Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not [himself] considered.

---

been thinking." ECF No. 15 at 2 (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009)).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 28

*Orn*, 495 F.3d at 632 (internal citations omitted). As discussed in detail above, the non-treating and non-examining doctors Dr. Nelp, Dr. Thuline, and Dr. Perll relied on the same clinical findings and objective medical testing as treating physicians Dr. Overman and Dr. Schuster. Thus, the ALJ's reliance on the differing conclusions of these non-treating physicians does not constitute substantial evidence necessary to support the ALJ's rejection of Plaintiff's treating physician's opinions.

For all of these reasons, the court finds the ALJ did not give specific and legitimate reasons, supported by substantial evidence, to reject Dr. Overman's and Dr. Schuster's opinions. The court must reconsider these opinions on remand.

**2)  Theodore Becker, Ph.D., Christopher Snell, Ph.D., Staci Stevens, M.A., Elizabeth Thybulle, N.D., Scott Mindell, D.C., and Kathryn Reid, M.A.**

The opinion of an "acceptable medical source" is given more weight than that of an "other source." SSR 06-03p, 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987). Moreover, "the adjudicator generally should explain the weight given to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 29

1    opinions from these 'other sources,' or otherwise ensure that the discussion of the

2    evidence in the determination or decision allows a claimant or subsequent reviewer

3    to follow the adjudicator's reasoning, when such opinions may have an effect on

4    the outcome of the case." SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL

5    2329939 at *4.

6         As noted by the ALJ, "[t]hese examiners and/or treating providers opined

7    that the claimant is incapable of performing any work, including, even sedentary or

8    light duty." Tr. 20. In a report dated November 2010, Christopher Snell, Ph.D. and

9    Staci Stevens, M.A. administered a cardiopulmonary exercise test and found

10   Plaintiff was "less efficient at low levels of work in the post-exertional state. This

11   day to day variability will prevent her from reliability [sic] and consistently

12   performing light sedentary work." Tr. 297 (citing "abnormal" results in categories

13   including reproducibility, metabolic responses, cardiovascular responses,

14   sympathetic response, pulmonary function, cognitive function, and recovery

15   response). In November 2010 Theodore Becker, Ph.D. completed an extensive

16   performance-based physical capacity evaluation and found Plaintiff "should be

17   considered work intolerant." Tr. 310-339.  Chiropractor Scott Mindel, D.C. treated

18   Plaintiff on a regular basis for nine months in 2010, and opined that "[d]ue to the

19   chronicity of [Plaintiff's] pain and fatigue and the worsening of her symptoms with

20   activity, it is my professional opinion that [Plaintiff] is not able to engage in any

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  30

form of work at this time." Tr. 492. In December 2010 Kathryn Reid, M.A.

conducted a vocational assessment of Plaintiff, including an interview, and opined

that she "does not have the physical tolerance for a full work day or work week,

even within the confines of sedentary office work." Tr. 501. Dr. Elizabeth

Thybulle, Plaintiff's treating naturopathic doctor, opined on several occasions that

she was unable to work for eight hours per day, five days a week. Tr. 525, 529,

573-574.  The ALJ granted all of these "other source" treating or examining

providers' opinions "little weight" for same reason he found Plaintiff not credible

and rejected the opinions of her treating physicians, namely: they are inconsistent

with evidence that Plaintiff's symptoms improved with medication and therapy;

they "do not correlate with the Plaintiff's range of activities;" and they are not

consistent with the medical opinions of Dr. Nelp and the state agency physicians

"who concluded, based on the overall medical record, that the claimant is able to

perform work at the sedentary level." Tr. 20.

Plaintiff argues the ALJ erred in rejecting opinion evidence from "other

sources." ECF No. 12 at 10-16.  As discussed in detail above, the ALJ's findings

regarding Plaintiff's daily activities, and her alleged improvement with medication

and chiropractic care, was not supported by substantial evidence in the record, and

therefore is not a germane reason to generally reject the "other source" opinion

evidence. *See* supra, sections A & B. The ALJ also found that "these [other source]

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 31

1    opinions are not consistent with the medical opinion of medical expert Dr. Nelp,

2    and the opinions of the state agency reviewing medical consultants, who concluded

3    based on the overall medical record, that the claimant is able to perform work at

4    least at the sedentary level." Tr. 20. Defendant argues that as a "licensed physician,

5    Dr. Nelp's opinion warranted greater weight." ECF No. 14 at 15 (citing SSR 06-

6    03p, *available at* 2006 WL 2329939). However, while the SSR cited by Defendant

7    in support of this argument indicates that "[t]he fact that a medical opinion is from

8    an 'acceptable medical source' is a factor that may justify giving that opinion

9    greater weight;" it also emphasizes that opinions from all medical sources must be

10   weighed "depending on the particular facts in a case, and after applying the factors

11   for weighing opinion evidence …. For example, it may be appropriate to give more

12   weight to the opinion of a medical source who is not an 'acceptable medical

13   source' if he or she has seen the individual more often than the treating source and

14   has provided better supporting evidence and a better explanation for his or her

15   opinion." SSR 06-03p, *available at* 2006 WL 2329939 at *5. The "other sources"

16   listed above actually treated or examined Plaintiff , sometimes on an ongoing and

17   consistent basis, as opposed to Dr. Nelp who never treated or examined Plaintiff.

18   *See Lester*, 81 F.3d at 831 ("[t]he opinion of a nonexamining physician cannot *by*

19   *itself* constitute substantial evidence that justifies the rejection of the opinion of

20   either an examining or a treating physician"). The ALJ did not appear to consider

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  32

this or other factors for weighing "other source" opinions. This is particularly glaring in the case of Dr. Becker, Dr. Snell, and Ms. Stevens, who provided extensive and specialized supporting evidence "indicating that even light work will demand more energy than can be aerobically generated" (Tr. 303) and showing that Plaintiff should be considered "work intolerant" (Tr. 310). Regardless, their opinions were summarily rejected in favor of Dr. Nelp's selective interpretation of those same results as "show[ing] capacity for sedentary exertional work." Tr. 20.

As a final matter, the court is compelled to note that every single practitioner that actually examined or treated the Plaintiff, including the treating physicians addressed above, found Plaintiff was unable to sustain gainful employment due to her limitations. For these reasons and those discussed in the previous sections, these were not germane reasons to reject the opinion of Plaintiff's treating and examining "other sources." The Commissioner should reevaluate these "other source" opinions on remand.

## C. Lay Testimony

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Here, the record

1    contains statements in support of Plaintiff's application from her mother, father,

2    sister, friends, employer, and co-workers. Tr. 253-261. As noted by the ALJ,

3    "[t]hese reports reiterated many of the claimant's allegations such as constant

4    fatigue, low energy/deterioration in stamina, and loss of weight, as well as

5    difficulties engaging in various physical activities." Tr. 21, 253-261. The ALJ

6    found these statements supported that Plaintiff had "some limitations," however,

7    she concluded that the lay witness evidence "generally reflect[s] the same

8    allegations made by the claimant that she is completely disabled from working,

9    allegations that the undersigned finds to be inconsistent with the opinions of Dr.

10   Nelp and the state agency medical consultants, as well as the claimant's range of

11   activities, as discussed above." Tr. 21.

12        Defendant argues that the ALJ did not err in rejecting the lay statements

13   because they repeated the same allegations made by Plaintiff, and thus the ALJ's

14   reasons for rejecting Plaintiff's credibility applied "equally well" to lay statements.

15   ECF No. 14 at 15 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694

16   (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and

17   convincing reasons for rejecting [Plaintiff's] own subjective complaints, and

18   because [lay witness's] testimony was similar to complaints, it follows that the

19   ALJ also gave germane reasons for rejecting her testimony.")).  However, in this

20   case, as discussed above, the ALJ's rejection of Plaintiff's subjective complaints

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  34

1    was *not* supported by clear and convincing reasons. Thus, in keeping with the

2    reasoning in *Valentine*, it does not "follow" that the ALJ gave germane reasons for

3    rejecting the lay statements, and they must be reconsidered on remand.

4    **D. Step Four / Step Five**

5    Plaintiff argues that the ALJ erred in finding Plaintiff could perform past

6    relevant work at step four. ECF No. 12 at 18-20. Defendant responds that the

7    ALJ's unchallenged alternative finding that Plaintiff can perform work existing in

8    significant numbers in the national economy rendered harmless any error at step

9    four. Tr. 21-22; ECF No. 14 at 16-18 (citing  *Molina*, 674 F.3d at 1115 (ALJ's

10   error is harmless where it is "inconsequential to the ultimate nondisability

11   determination")). Because of errors in considering the medical opinion evidence

12   and in the credibility determination, the RFC is not properly supported and the

13   subsequent findings at steps four and five are in question. On remand, the

14   Commissioner should make a new step four and step five findings as is

15   appropriate.

16                              **CONCLUSION**

17   The ALJ's decision was not supported by substantial evidence and free of

18   legal error. Remand is appropriate when, like here, a decision does not adequately

19   explain how a conclusion was reached, "[a]nd that is so even if [the

20   Commissioner] can offer proper post hoc explanations for such unexplained

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  35

conclusions," for "the Commissioner's decision must stand or fall with the reasons set forth in the [] decision." *Barbato v. Comm'r of Soc. Sec.,* 923 F.Supp. 1273, 1276 n. 2 (C.D.Cal.1996) (citations omitted). On remand, the ALJ must reconsider the credibility analysis and the lay evidence evaluation. Additionally, the ALJ must properly weigh all of the relevant medical opinion evidence according to the requisite factors; and, if necessary, reconsider the entirety of the sequential process.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** this 17th day of  April, 2015.

_____*s/Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  36